UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RAYMAN BAKER,

                Plaintiff,

v.                                                             Case No. 24-cv-1478-pp

SGT. ETSINGER, *et al.*,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 14) UNDER 28 U.S.C. §1915A**

On May 13, 2025, the court screened plaintiff Rayman Baker's *pro se* complaint under 42 U.S.C. §1983, determined that it did not state a claim against any defendant and gave the plaintiff an opportunity to file an amended complaint by June 13, 2025. Dkt. No. 11. On June 16, 2025, the court granted the plaintiff's motion for an extension of that deadline and ordered him to file an amended complaint by July 14, 2025. Dkt. No. 13. On July 9, 2025, the court received the plaintiff's amended complaint. Dkt. No. 14. This decision screens the amended complaint.

**I.    Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that

are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

  B. <u>The Plaintiff's Allegations</u>

  The amended complaint names as defendants Sergeant Etsinger; Correctional Officers Stanchik, Stobb and Otten; Rebecca Mohnen; Health Services Unit (HSU) Manager Kelly Pelky; Captain Christiensen; Paul Larson; and John and Jane Doe defendants. Dkt. No. 14 at 1–3.

  The plaintiff alleges that on August 13, 2024, he woke up at around 6:20 a.m. to use the bathroom. Id. at 4. But the plaintiff found that he was unable to move, and that any movement caused him "excruciating pain." Id. The plaintiff woke his cellmate, Markis Terrell, and asked him to call for a unit officer. Id. Terrell "left and returned some minutes later" and told the plaintiff that Sergeant Etsinger told him to wait until after the morning count. Id. The plaintiff asked Terrell to tell Elsinger about "the seriousness of the paralysis" that the plaintiff was experiencing, but Etsinger and Otten responded that it was "not an emergency" and that "nothing is wrong" because the plaintiff was fine the previous day. Id. at 4–5. The plaintiff says that he urinated on himself while waiting for help and "was crying" from the pain and embarrassment. Id. at 5.

  The plaintiff alleges that at around 7:45 a.m., Etsinger, Otten, Stanchik and Christiensen came to his cell. Id. The plaintiff told these defendants that he could not move to get into a wheelchair, and Christiensen warned him "that if [he] didn't get in the wheelchair it would be considered refusing medical

attention." Id. The plaintiff told staff that he "was paralyzed and unable to move," so they "collectively moved [him] from [his] bed to the wheelchair." Id. The plaintiff complained that this, too, was painful, but staff continued to move him into the wheelchair. Id. Staff wheeled the plaintiff to the HSU, and during that trip he again urinated on himself and continued to cry. Id.

At the HSU, two unknown nurses asked the plaintiff to explain his issue and then wheeled him into a room where they told him "that someone would check on [him]." Id. at 5–6. The plaintiff says he waited an hour for another nurse, who "apologized for how [he] was being treated" and said staff would take him to a hospital. Id. at 6. The plaintiff says that he waited another hour in his "urine-soaked clothes," until two unknown officers arrived to take him to the hospital. Id. These officers allegedly threatened not to take the plaintiff to the hospital unless he was wearing his green prison uniform, which the plaintiff says he did not have with him when staff brought him to the HSU. Id. The plaintiff says that these officers dressed him in a prison uniform over his soiled clothes, which caused him additional pain. Id. They then took him to Mercy Medical Hospital in Oshkosh. Id.

The plaintiff says that hospital staff took "a full-body x-ray," drew blood and performed other tests that allowed them to determine that "something in [his] back had ruptured," and that the plaintiff had "pinched nerves along [his] lower spinal cord." Id. Hospital staff prescribed the plaintiff gabapentin for his "agonizing pain" and told him that they would recommend he be sent to a spinal specialist. Id. He says that staff did not provide treatment to relieve his

paralysis but told him to take the gabapentin, rest and minimize movement to avoid aggravating his injuries. Id. Staff also provided him "a plastic jug to urinate in" once he was back at the prison. Id.

The plaintiff returned to the prison at around 8:30 p.m. Id. The plaintiff says that unspecified HSU staff "asked about the hospital's findings" and checked his vitals. Id. at 7. He says that HSU staff would not allow him gabapentin until HSU Manager Pelky could review and approve his prescription. Id. Staff instead gave him Duloxetine, Carbamazepine and ibuprofen and returned the plaintiff to his cell. Id. He says that staff helped him out of his wheelchair and into his bunk, which caused him pain because the HSU-prescribed medication "had almost no effect." Id. The plaintiff says that his cellmate, Terrell, helped him wash himself, dress himself and get into bed that night. Id.

The plaintiff alleges that his paralysis continued for about three days, during which Terrell continued to help him. Id. He says that HSU staff provided him adult diapers for his incontinence. Id. The plaintiff alleges that he continued using a wheelchair with his cellmate's assistance for nearly eight months. Id. He saw specialists and "suffered through limited physical therapy exercises," even though he had not yet received a diagnosis or began an official rehabilitation program. Id. at 7–8. He says that he had to quit school because he was in too much pain to attend classes or focus on schoolwork. Id. at 8. The plaintiff alleges that unspecified staff provided him a steroid shot, which improved his recovery somewhat. Id. He says that he continues to use a walker

5

and to suffer pain, and that an outside doctor recently told him that he may require back surgery. Id. The plaintiff says that he still has not received gabapentin despite his pain and outside recommendations that he take it. Id.

The plaintiff claims that defendants Stanchik, Etsinger, Otten, Christiensen and Stobb were deliberately indifferent to his injury when they loaded him into the wheelchair to take him to the HSU. Id. He says that these defendants "may have either caused or exacerbated [his] back injury by delaying their response or forcing him into a wheelchair." Id. He claims that defendants Pelky and Jane Doe HSU staff violated his rights when they denied him gabapentin despite multiple outside doctors prescribing it for his pain. Id. at 8–9. The plaintiff claims that "all of the named defendants" violated his rights when they left him "in his urine-soaked clothing the date he initially suffered the paralysis" and did not offer him "a urine bottle or clean change of clothes." Id. at 9. Finally, he claims that defendant Larson "subjected the Plaintiff to physical therapy for an undiagnosed injury," which "may have exacerbated the injury and final diagnosis." Id.

The plaintiff seeks compensatory damages of $3.5 million and punitive damages of $550,000 against all defendants. Id. at 10.

C. Analysis

The court analyzes the plaintiff's allegations about the denial of proper medical care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation

of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776.

The plaintiff alleges that he awoke to find himself paralyzed, and that attempting to move caused him considerable pain. Hospital staff diagnosed him with a spinal issue, including a rupture in his back and pinched nerves. The plaintiff says that his paralysis lasted about three days, and that his spinal issues are ongoing, causing him continued pain and use of a walker. He also says he may require surgery in the future. The court finds that these allegations satisfy the objective component of an Eighth Amendment claim because temporary paralysis and excruciating pain are medical issues for which "the need for treatment would be obvious to a layperson." Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014) (citing Knight v. Wiseman, 590 F.3d 458, 463 (7th Cir. 2009)).

The court next must decide whether the plaintiff's allegations demonstrate that each defendant knew of but was deliberately indifferent to the plaintiff's serious medical needs. The plaintiff first alleges that Sergeant Etsinger and Officer Otten delayed providing medical treatment for about an

7

hour after the plaintiff's cellmate told them that the plaintiff could not move and was in pain. "A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." Arnett v. Webster, 658 F.3d 742, 753 (7th Cir. 2011) (citing McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" Id. (quoting McGowan, 612 F.3d at 640). The plaintiff alleges that Etsinger and Otten did not immediately respond to Terrell's requests for medical attention for the plaintiff, insisted there was no medical emergency and told Terrell that the plaintiff could wait until after count to receive treatment. A prison official could reasonably disbelieve an incarcerated person's assertion that he or his cellmate was in severe pain. See Horshaw v. Casper, 910 F.3d 1027, 1029 (7th Cir. 2018); Olson v. Morgan, 750 F.3d 708, 713 (7th Cir. 2014). But the plaintiff's allegations suggest that these defendants ignored Terrell's repeated requests for aid because they had seen the plaintiff move the previous day. Those allegations come closer to demonstrating that Etsinger and Otten showed "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." Rasho v. Jeffreys, 22 F.4th 703, 710 (7th Cir. 2022) (quotation omitted). The court will allow the plaintiff to proceed on an Eighth Amendment claim against Etsinger and Otten for delaying care and prolonging the plaintiff's pain.

The plaintiff next alleges that Officers Stanchik, Otten and Stobb, Sergeant Etsinger and Captain Christiensen disregarded his injury when they moved him into a wheelchair to take him to the HSU despite his complaints of pain. Like the original complaint, the amended complaint does not provide sufficient allegations tying each defendant to the alleged violations of the plaintiff's constitutional rights. See Dkt. No. 11 at 4 (citing Iqbal, 556 U.S. at 678; and Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008)). The plaintiff includes Stobb in this claim, but he does not mention Stobb in the body of the amended complaint or explain how Stobb personally violated his rights. He lumps Stobb into his allegations against the other officers, whose involvement he does describe.

But this deficiency is immaterial because these allegations do not state a claim against any of these defendants. The plaintiff says that the officers caused him pain by helping him into a wheelchair when he said he could not do it himself. The officers then wheeled the plaintiff to the HSU to receive medical treatment. Even though these actions caused the plaintiff pain, the plaintiff has not alleged that it was *unnecessary* pain or that the defendants *intended* to cause him pain when they moved him into the wheelchair. See Gabb, 945 F.3d at 1033 (quoting Pyles, 771 F.3d at 408) (noting that the Eighth Amendment protects only against "'the wanton and unnecessary infliction of pain'"). It would be unrealistic to expect that prison officials or medical officials could keep the plaintiff "completely pain-free" while transporting him to the HSU for treatment or providing him treatment for his

spine injuries. See Arce v. Wexford Health Sources Inc., 75 F.4th 673, 681 (7th Cir. 2023) (citing Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)). The plaintiff also speculates that this movement "may have" exacerbated his injury. But speculative allegations are insufficient to support a claim under §1983. See Hanks v. Hubbard, Case No. 21-2504, 2022 WL 356732, at *3 (7th Cir. Feb. 7, 2022) (citing Twombly, 550 U.S. at 554–56). The court will not allow the plaintiff to proceed on a claim against the officials who helped him into the wheelchair and took him to the HSU for treatment.

The plaintiff next claims that at the HSU, he saw two nurses who examined him, then left him in a room for an hour. He then saw another nurse who apologized for the delay and told the plaintiff that HSU staff would transport him to a hospital. As the court explained above, an unnecessary delay in medical treatment may violate the Eighth Amendment in certain circumstances. But delays in receiving medical treatment "are inevitable, particularly absent a life-threatening emergency. Such delays are even more likely in the prison environment." Berry v. Peterman, 604 F.3d 435, 442 (7th Cir. 2010). Although the plaintiff may have felt ignored or been in pain while awaiting further treatment, he has not sufficiently alleged that this delay was intentional or unnecessary given his symptoms and circumstances. The court will not allow the plaintiff to proceed on a claim against these nurses.

The plaintiff next alleges that two unknown officers transported him to the hospital, but that they first forced him to don a prison uniform. The plaintiff says that the officers put this uniform on over his urine-soaked

clothes, which caused him additional pain. This is a close call. On the one hand, the plaintiff's allegations suggest that the officers might have been trying to comply with requirements that the plaintiff wear a prison uniform to receive treatment. That suggests that these allegations are like those against the officials who helped the plaintiff into a wheelchair to take him to the HSU. On the other hand, it is reasonable to infer that if that were the case, the officials could have brought with them to the hospital a prison uniform to identify the plaintiff as an incarcerated individual, rather than forcing him to wear it over his soiled clothes and to endure significant pain as they forced the uniform onto him. Despite this uncertainty, the court will allow the plaintiff to proceed on an Eighth Amendment claim against these unknown officers. At the end of the order, the court will give the plaintiff information about identifying these officers.

The plaintiff next alleges that HSU Manager Pelky and unknown HSU staff denied him the gabapentin that hospital staff prescribed him. He says that medical staff gave him other medications that did not relieve his pain until Pelky could approve the plaintiff's prescription for gabapentin. But the plaintiff says that Pelky never approved his gabapentin prescription. Pelky may have had legitimate reasons for not approving the plaintiff's prescription for gabapentin, which the court knows often is a restricted medication in Wisconsin prisons. And "the Eighth Amendment does not entitle incarcerated patients to their preferred pain medication." Arce, 75 F.4th at 681. But neither may a prison medical official "continue with a course of treatment that [she]

knows is ineffective." Arnett, 658 F.3d at 754 (citing Greeno v. Daley, 414 F.3d 645, 655 (7th Cir. 2005)). If Pelky knew that the medications she prescribed to the plaintiff were not working but continued to prescribe them, she may have violated his rights. The court will allow the plaintiff to proceed on this Eighth Amendment claim against HSU Manager Pelky.

The plaintiff may not proceed against the Jane Doe nurse or nurses who gave him the medication. The plaintiff says that these nurses took the plaintiff's vitals and told him that they could not prescribe him gabapentin until Pelky approved it. Pelky never approved the medication, so the nurses never provided it to the plaintiff. Nurses generally cannot provide advanced care and cannot override a provider's instructions. See Brown v. Osmundson, 38 F.4th 545, 553 (7th Cir. 2022); Reck v. Wexford Health Sources, Inc., 27 F.4th 473, 485 (7th Cir. 2022). It would be inappropriate to hold them liable for not providing the plaintiff a medication that they had no authority to provide.

The plaintiff next alleges that "all of the named defendants" subjected him to cruel and unusual punishment by forcing him to remain in his urine-soaked clothes on August 13, 2024 and never offering him clean clothes. The plaintiff does not say how long he remained in the soiled clothes. He says that he first urinated on himself sometime after he awoke at 6:20 a.m., and that prison staff took him to the hospital about three hours later. He does not say whether he was cleaned or received a change of clothes at the hospital. He returned to the hospital at about 8:30 p.m., and his cellmate helped him shower that night. That suggests the plaintiff was in the soiled clothes for

between three and fourteen hours. Courts that have reviewed similar allegations have found that forcing an incarcerated person to remain in soiled clothes for several hours is "not sufficiently serious to support [an] Eighth Amendment claim." Castro v. Ill. Dep't of Corr., Case No. 15-CV-00707, 2015 WL 4751019, at *2 (S.D. Ill. Aug. 11, 2015) (citing Cunningham v. Eyman, 17 F. App'x 449, 454 (7th Cir. 2001), and other cases). No doubt it was unpleasant for the plaintiff to remain in his soiled clothes for any length of time, but his allegations do not amount to the kind of "extreme deprivation" required to violate the Eighth Amendment. See Hudson v. McMillian, 503 U.S. 1, 9 (1992). And the plaintiff asserted this claim only generally against "all defendants," even though in its May 13, 2025 screening order the court told the plaintiff that it was not enough for him to allege that "all defendants" violated his rights. See Dkt. No. 11 at 4 (citing Grieveson, 538 F.3d at 778). The court will not allow the plaintiff to proceed on this claim.

The plaintiff has not stated a claim against defendants Larson or Mohnen. The amended complaint contains no allegations against Larson and does not say who this person is. The only mention of Larson in the amended complaint is in the plaintiff's final paragraph, where he says that Larson "subjected" him to physical therapy before he had a diagnosis, which "may have" exacerbated his injury. Dkt. No. 14 at 9. These allegations do not provide enough information to support a claim against Larson. The plaintiff does not say what position Larson had at the prison and does not explain what he means when he says that Larson "subjected" him to physical therapy. Did

Larson prescribe physical therapy? Was he the plaintiff's physical therapist who helped him perform the rehabilitative exercises? The amended complaint does not say. The plaintiff also does not say that he suffered any injury from these exercises. He says only that the exercises *may have* exacerbated his injury. But as the court explained above, the plaintiff may not base a claim entirely on speculation. See Hanks, 2022 WL 356732, at *3). The court will dismiss Larson and will not allow the plaintiff to proceed against him.

The court also will dismiss defendant Mohnen because the amended complaint alleges nothing at all against her. The plaintiff does not say who Mohnen is or describe her personal involvement in his alleged mistreatment. He alleged in the previous complaint that she was a Unit Manager, but the amended complaint does not reallege anything about her. As the court explained in the previous screening order, "[t]he plaintiff must explain how each defendant is personally responsible for the alleged violation of his constitutional rights." Dkt. No. 11 at 5 (citing Taylor v. Ways, 999 F.3d 478, 493 (7th Cir. 2021)). Because the plaintiff again fails to explain how Mohnen was personally involved in the misconduct or responsible for his injuries, he fails to state a claim against her.

To summarize, the plaintiff may proceed on the following claims: 1) an Eighth Amendment claim against Sergeant Etsinger and Officer Otten for their unnecessarily delay in addressing the plaintiff's medical concerns; 2) an Eighth Amendment claim against the John/Jane Doe transporting officers who forced the plaintiff to wear a prison uniform to the hospital and caused him

unnecessary pain; and 3) an Eighth Amendment claim against HSU Manager Pelky for prescribing ineffective medication despite the plaintiff's continued pain. The plaintiff may not proceed on any other claim or against any other defendant.

Because the plaintiff does not know the names of the John/Jane Doe transporting officers, he must use discovery to learn their names. Once all the named defendants have responded to the plaintiff's amended complaint, the court will enter a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions. The order also will set a deadline for the plaintiff to identify the Doe defendants and will provide the plaintiff additional information for identifying them. **The plaintiff must not start the process for identifying the Doe defendants until the court has entered the scheduling order.**

## II. Conclusion

The court **DISMISSES** defendants Correctional Officer Stanchik, Correctional Officer Stobb, Captain Christiensen, Rebecca Mohnen and Paul Larson.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Sergeant Etsinger, Correctional Officer Otten and HSU Manager Kelly Pelky. Under the informal service agreement, the court **ORDERS** those defendants to respond to the amended complaint within sixty days.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

Dated in Milwaukee, Wisconsin this 12th day of August, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**