UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RAYMAN BAKER,

Plaintiff,

v. Case No. 24-cv-1478-pp

CHARLES ETSINGER, *et al.*,

Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 33), DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (DKT. NO. 49), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 49) AND SETTING CASE DEADLINES**

---

Plaintiff Rayman Baker, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed this case alleging violations of his constitutional rights. The court screened the amended complaint and allowed the plaintiff to proceed on an Eighth Amendment claim against defendants Sergeant Etsinger and Officer Otten for their alleged unnecessary delay in addressing the plaintiff's medical concerns, an Eighth Amendment claim against defendant HSU Manager Pelky for prescribing ineffective medication and an Eighth Amendment claim against John/Jane Doe transporting officers who allegedly forced the plaintiff to wear a prison uniform to the hospital and caused him unnecessary pain. Dkt. No. 16 at 14-15. On January 21, 2026, the court dismissed the Doe defendants because the plaintiff had not identified

them or explained why he could not do so by the deadline the court had set.[1] Dkt. No. 30. This decision addresses the defendants' motion for partial summary judgment on exhaustion grounds, dkt. no. 33, and the plaintiff's motion for reconsideration of the court's order denying his motion to appoint counsel, dkt. no. 49.

## I. Defendants' Motion for Partial Summary Judgment on Exhaustion Grounds (Dkt. No. 33)

### A. Facts

The plaintiff has been incarcerated at Oshkosh Correctional Institution since May 29, 2024. Dkt. No. 35 at ¶1. On August 14, 2024, the plaintiff submitted an inmate complaint stating that on August 13, 2024, Etsinger and Otten had delayed addressing his medical concerns, and that officers had delayed addressing his medical concerns two days prior, on August 11, 2024. Dkt. No. 36-3 at 4. The institution complaint examiner (ICE) did not accept the plaintiff's inmate complaint because it contained several procedural defects, including the plaintiff's attempt to address both an August 11, 2024 incident and an August 13, 2024 incident in one complaint. Id. at 1-3. The ICE issued the plaintiff an "ICE Return Letter," which instructed him about the proper procedures for filing an inmate complaint and directed him to resubmit his

[1] On March 16, 2026, the court denied without prejudice the plaintiff's motion for reconsideration of the court's order dismissing the Doe defendants. Dkt. No. 42 at 3. The court said that if it grants the defendants' motion for summary judgment on exhaustion grounds as to the plaintiff's claim against the Doe defendants, there will be no need for the plaintiff to identify them. Id. at 2. The court also said that if the court denies the defendants' motion, the plaintiff could renew his motion for reconsideration. Id.

original complaint with the corrections, including only addressing one date of incident. Id.

On August 16, 2024, the plaintiff submitted another inmate complaint relevant to his claim that officers had delayed addressing his medical concerns on August 13, 2024. Dkt. No. 36-4 at 3-5. The ICE did not accept this submission because it was too long and contained more than one issue. Id. at 1-2. The ICE issued the plaintiff an ICE Return Letter, again instructing him about the proper procedures for filing an inmate complaint. Id. The ICE identified the following issues the plaintiff had raised in the inmate complaint: 1) Staff did not come to the plaintiff's cell for a medical emergency; 2) The plaintiff urinated on himself when he was having his medical emergency and had to sit/lay in it for hours; 3) The plaintiff was forced into a wheelchair to be taken to HSU; and 4) Nursing staff didn't notice that the plaintiff urinated on himself again and he had to sit in it for an hour. Id. at 1. The ICE told the plaintiff to resubmit his original complaint with one, clearly identified issue. Id.

On September 3, 2024, the plaintiff submitted an unsigned and undated third inmate complaint relevant to his claim that officers had delayed in addressing his medical concerns on August 13, 2024. Dkt. No. 36-5 at 2, 4. The ICE did not accept this complaint because the plaintiff did not sign or date it. Id. at 1. The ICE Return Letter instructed the plaintiff to sign and date his submission so it could be accepted by the ICE office. Id. On September 5, 2024, the plaintiff resubmitted the inmate complaint with a date and signature.

Dkt. No. 36-2 at 14-15. The ICE accepted it, and the resubmitted complaint became OSCI-2024-13170. Id.

The complaint alleges that Etsinger and Otten delayed in addressing the plaintiff's medical concerns on August 13, 2024. Id. The complaint does not allege that the John/Jane Doe defendants forced the plaintiff to wear a prison uniform before going to the hospital or that Pelky prescribed him ineffective medication. Id. The ICE recommended dismissal of the complaint, and the reviewing authority accepted that recommendation and dismissed it. Dkt. No. 36-2 at 2-4. The plaintiff appealed the dismissal, and the corrections complaint examiner (CCE) recommended dismissing the appeal. Id. at 7, 16. The Office of the Secretary did not accept that recommendation and affirmed the appeal. Id. at 8.

Complaint OSCI-2024-13170 is the only inmate complaint submitted by the plaintiff and accepted by the ICE that is potentially related to the plaintiff's claims in this case. Dkt. No. 35 at ¶8.

B. Discussion

1. *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable

substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be, or is, genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

2. *Analysis*

The defendants contend that the plaintiff failed to exhaust his administrative remedies with respect to his Eighth Amendment claims against Pelky and the John/Jane Doe transporting officers. Dkt. No. 33. They assert that the three inmate complaints the plaintiff submitted that were returned to him did not exhaust his administrative remedies because they were not addressed on the merits. Id. at 10-11. The defendants also contend that the inmate complaint that the ICE accepted, OSCI-2024-13170, did not exhaust

the plaintiff's claims against Pelky or the Doe defendants because it did not raise issues related to those claims. Id. at 12-13.

The plaintiff concedes that he did not exhaust regarding his Eighth Amendment claim against Pelky and "that dismissal of that claim is therefore warranted." Dkt. No. 43 at 2. He maintains that he exhausted his claim against the Doe defendants. Id. at 4. The plaintiff contends that prison officials had notice of his claims against the Doe defendants because two of the inmate complaints he submitted that the ICE did not accept raised his claims that staff left him sit in urine-soaked clothing for hours. Id. The plaintiff also contends that prison officials impeded his efforts to raise claims against the Doe defendants because in returning the plaintiff's inmate complaints, the ICE "misled him to believe he could only raise one of his health-related issues per week because he could only file one complaint per week." Id. at 5-6. The plaintiff states that the ICE should have informed him that because his complaint involved multiple health-related issues, under Wis. Admin. Code §DOC 310.07(7) he could have filed more than one complaint per week. Id. at 6. According to the plaintiff, prison officials took "advantage of the exhaustion requirement by misleading him to believe he had to choose one health-related issue and abandon all others for inclusion in the one-per-week complaint, thereby reducing prison officials' exposure to suit on multiple grounds as opposed to only one." Id. at 7. He asserts that because prison officials impeded his exhaustion efforts, the court should allow his claims against the Doe defendants to proceed; he says that his first two inmate complaints "raised the

urine-soaked clothing claims later lodged in his Amended Complaint." Id. The plaintiff contends that the Office of the Secretary's affirmation of his appeal in complaint OSCI-2024-13170 shows that prison officials abused the exhaustion requirement at the institution level and "coincide[s] with his arguments citing the ICE's omission of the exception to the one-per-week rule for complaints." Id. at 10-11.

The defendants reply that the plaintiff's submissions did not exhaust his administrative remedies. Dkt. No. 44 at 3. They reiterate that the ICE returned the plaintiff's first two inmate complaints with letters instructing him to clearly identify the one issue he wanted resolved, and that the ICE returned the plaintiff's third inmate complaint because he did not sign and date it. Id. The defendants assert that even if the ICE had processed these inmate complaints, they did not address his claim that the Doe defendants forced him to don a prison uniform before going to the hospital. Id. The defendants contend that OSCI-2024-13170 also did not address the plaintiff's claim against the Doe defendants and therefore did not exhaust remedies with respect to that claim. Id. at 4.

The Prison Litigation Reform Act (PLRA) says that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance

process at his institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted). Because exhaustion is an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to exhaust. Pavey v. Conley, 544 F.3d 739, 740-41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to incarcerated individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated person may commence a civil action, he must exhaust all administrative remedies that the Department of Corrections (DOC) has promulgated by rule. Wis. Admin. Code §DOC 310.05. The ICRS is available for incarcerated individuals to "raise issues regarding

policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis. Admin. Code §DOC 310.07(2). Complaints submitted later than fourteen days after the event may be accepted for good cause. Id. The ICE shall accept, return or reject a complaint. Wis. Admin. Code §DOC 310.10(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). Within fourteen days after the date of the decision, an incarcerated individual may appeal the reviewing authority decision to the CCE. Wis. Admin. Code §DOC 310.09(1). The CCE reviews the appeal and makes a recommendation to the Secretary of the DOC. Wis. Admin. Code §DOC 310.12(9). The Secretary affirms or dismisses the CCE's recommendation, or returns the appeal to the CCE for further investigation. Wis. Admin. Code §DOC 310.13(2).

It is undisputed that the plaintiff submitted three inmate complaints that the ICE returned to him because they contained procedural defects. The first two complaints contained more than one issue, and the ICE directed the plaintiff to resubmit his complaints so that they contained only one issue or date of incident. The plaintiff did not sign or date his third complaint, and the ICE returned the complaint and directed him to resubmit it with a date and

signature. To exhaust under Wisconsin's prison rules, inmate complaints must "[c]ontain only one issue per complaint, and shall clearly identify the issue." Wis. Admin. Code. §DOC 310.09(1)(e). An inmate complaint that is dismissed for procedural reasons, rather than addressed on the merits, does not exhaust an incarcerated individual's administrative remedies. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citing Pozo, 286 F.3d at 1025); see also Durley v. Kacyon, Case No. 21-cv-154, 2022 WL 16530885, at *6 (E.D. Wis. Oct. 29, 2022). The first three inmate complaints the plaintiff submitted could not have exhausted his administrative remedies because the ICE appropriately rejected them on procedural grounds.

In addition to being rejected on procedural grounds, these inmate complaints did not raise the issue of the plaintiff's claim against the Doe defendants. The plaintiff states that his first two inmate complaints allege that staff left him sitting in urine-soaked clothing for hours. But his claim against the Doe defendants in this case is that they forced him to put on his prison uniform before going to the hospital, which caused him more pain. The plaintiff fully exhausted complaint OSCI-2024-13170, but he also did not raise the issue of his Eighth Amendment claim against the Doe defendants in that complaint. "The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." Jackson v. Esser, 105 F.4th 948, 958-59 (7th Cir. 2024) (quoting Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013)). Assuming that an incarcerated individual has taken all the administrative steps, his

"complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" Id. at 959 (quoting Schillinger v. Kiley, 954 F.3d 90, 995 (7th Cir. 2020)). The plaintiff's failure to submit an inmate complaint in which he raised the issue of his claim against the Doe defendants means that he did not exhaust administrative remedies.

The plaintiff asserts that prison staff prevented him from exhausting administrative remedies because the ICE Return Letters failed to inform him that under Wis. Admin. Code §DOC 310.07(7), he could submit more than one complaint per week if his issues related to health concerns. It is not clear why the plaintiff believes this prevented him from filing an inmate complaint regarding his claim against the Doe defendants. The ICE Return Letters did not prevent the plaintiff from filing an inmate complaint nor did they say that he could not submit one. The plaintiff has not offered any reason why he could not have simply submitted an inmate complaint regarding his issue against the Doe defendants the following week. Although the complaint may have been submitted more than fourteen days after the occurrence giving rise to the complaint, a late complaint could have been accepted for good cause. See Wis. Admin. Code §DOC 310.07(2).

The plaintiff did not submit an inmate complaint raising the issue of his claim against the Doe defendants. The court will grant the State Defendants' motion for partial summary judgment on exhaustion grounds, and it will

dismiss without prejudice the plaintiff's claims against Pelky and the Doe defendants. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

## II. Plaintiff's Motion for Reconsideration (Dkt. No. 49)

The plaintiff has filed a motion for reconsideration of the court's February 5, 2026 order (Dkt. No. 38) denying his motion to appoint counsel. Dkt. No. 49. The plaintiff states that he has a learning disability and that his ability to read and write is very limited. Dkt. No. 49 at 1. He says that a jailhouse lawyer drafted all his motions in this case, and that he "has no idea what to do when it comes to legalities[.]" Id. at 1. The plaintiff also asserts that he hasn't had access to his jailhouse lawyer for a while now and that he can't find anyone willing to help him. Id. at 1-2. The plaintiff says that he scored "0-700" on a "TABE" test the DOC administered. Id. at 2. He says that he included his results as proof, but the court has not received any tests results. Id. The plaintiff states that his new cellmate helped him draft his motion for reconsideration. Id.

Federal Rule of Civil Procedure 54(b) allows any order adjudicating fewer than all the claims to be revised at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties. Galvan v. Norberg, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment"). "The 'standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b).'" Cheese Depot, Inc. v. Sirob Imports, Inc., Case No. 14-C-1727, 2019 WL 1505399 at *1 (N.D. Ill.

Apr. 5, 2019) (quoting Morningware, Inc. v. Hearthware Home Prods., Inc., Case No. 09-C-4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011)).

Motions for reconsideration serve a very limited purpose in federal civil litigation: "to correct manifest errors of law or fact or to present newly discovered evidence." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987) (quoting Keene Corp. v. Int'l Fidelity Ins. Co., 561 F. Supp. 656, 665-66 (N.D. Ill. 1976), aff'd 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Such motions are disfavored and should be 'rare.'" Acantha LLC v. DePuy Orthopaedics Inc., Case No. 15-C-1257, 2018 WL 2290715, at *1 (E.D. Wis. May 19, 2018) (quoting Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir. 1990)).

The court's February 5, 2026 order denying without prejudice the plaintiff's motion to appoint counsel states:

> The plaintiff has satisfied the first requirement for appointment of counsel. However, the plaintiff's filings show that at this time he is capable of engaging in discovery and responding to a motion for summary judgment. The plaintiff filed a detailed amended complaint setting forth his allegations. His pleading is organized and demonstrates that he is very familiar with the events that gave rise to his claims and is very competent in presenting his issues to the court. Although the plaintiff's claims involve medical issues, they are not very complex. The plaintiff can describe his pain and the defendants' alleged responses to his concerns. If he needs more time to conduct discovery, he may file a motion for extension of time with the court before the deadline expires. If the defendants file a motion

> for summary judgment on the merits, the court will provide the parties with information about responding to the motion. If the case proceeds beyond the summary judgment stage, the court will most likely recruit a lawyer for the plaintiff. But at this stage, he is competent to proceed on his own.

Dkt. No. 38 at 3-4.

In his motion for reconsideration, the plaintiff does not contend that the court erred in denying his motion. For that reason, the court will deny the plaintiff's motion. But the court also will construe the plaintiff's filing as a renewed motion for appointment of counsel.

In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007)). And, given the scarcity of *pro bono* counsel resources, the

court may also consider the merits of a plaintiff's claim and what is at stake. Watts v. Kidman, 42 F.4th 755, 763-64 (7th Cir. 2022).

To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To demonstrate he satisfied the first prong, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other

characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

In its earlier order, the court determined that the plaintiff had made a reasonable attempt to find a lawyer on his own. The plaintiff says that he has a learning disability and that his ability to read and write is very limited. He also says that he does not know how to proceed with the legalities of his case and that the jailhouse lawyer who previously helped him is no longer available. Most incarcerated individuals are unfamiliar with how to litigate a case. Although the court cannot provide legal advice, it provides information to assist unrepresented litigants such as a complaint form, a guide and information about responding to an opposing party's motion for summary judgment. The plaintiff says that a jailhouse lawyer has helped him with most if not all the filings in this case. This makes it difficult for the court to evaluate the plaintiff's capabilities to represent himself. This order resolves the defendants' motion for partial summary judgment on exhaustion grounds. The plaintiff's remaining claim is based on allegation that defendants Etsinger and Otten unnecessarily delayed his request for medical care. The claim appears to be straightforward, and the court assumes that the plaintiff can describe his version of the incident. The court will again deny without prejudice the plaintiff's motion to appoint counsel. If, after the defendants file a motion for summary judgment on the merits (assuming they file such a mtoion), the plaintiff believes that he

cannot respond to the motion on his own, he may renew his request for counsel.

## III. Conclusion

The court **GRANTS** the defendants' motion for partial summary judgment on exhaustion grounds. Dkt. No. 33.

The court **DISMISSES** defendant Kelly Pelky.

The court **DENIES** the plaintiff's motion for reconsideration. Dkt. No. 49.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 49.

The court **ORDERS** that the deadline for the parties to complete discovery is **November 6, 2026** and the deadline for the parties to file motions for summary judgment on the merits of the plaintiff's remaining claim is **December 11, 2026**

Dated in Milwaukee, Wisconsin this 4th day of August, 2026.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**